UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA ARGUETA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALGREENS COMPANY,<br><br>Defendant. | Case No. 1:24-cv-00072-JLT-CDB<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND<br><br>(Doc. 16) |

Pending before the Court is the motion of Defendant Walgreens Company ("Defendant") to dismiss the class action complaint of Plaintiff Jessica Argueta ("Plaintiff") and request therein for judicial notice, filed on April 19, 2024. (Doc. 16). On May 15, 2024, Plaintiff filed an opposition to the motion to dismiss and Defendant filed a rely on May 24, 2024. (Docs. 18, 19).[1] For the reasons set forth herein, the Court will grant Defendant's motion to dismiss and dismiss Plaintiff's complaint without leave to amend.

**I.   BACKGROUND**

On January 17, 2024, Plaintiff Jessica Argueta ("Plaintiff") initiated this action with the filing of a complaint, asserting claims on behalf of herself and a putative class against Defendant Walgreens Company ("Defendant" or "Walgreens"). (*Id.* ¶¶ 6, 41-44).[2]   Plaintiff alleges

---

[1] On July 25, 2024, in light of the parties' stipulation to consent to the jurisdiction of a United States Magistrate Judge for the limited purpose of ruling on Defendant's pending motion to dismiss (Doc. 20), the Honorable District Judge Jennifer L. Thurston referred the pending motion to dismiss to the undersigned for final disposition. (Doc. 21).

[2] Citations to document pages used herein correspond to the CM/ECF-designated

Defendant sells the drug Phenazopyridine Hydrochloride ("PhenAzo")—marketed as a finished, over-the-counter ("OTC") product called "Urinary Pain Relief" (the "Product" or "Products") to treat symptoms of a urinary tract infection ("UTI")—"even though it is unsafe, ineffective, and unlawful to sell." This allegation serves as the basis for claims she asserts against Defendant for breach of express warranty, breach of implied warranty of merchantability, and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 1700, *et seq*. (*Id.* at 1, ¶¶ 2-4).

Plaintiff alleges that on or about August 17, 2023, she purchased the Product from one of Defendant's stores, Walgreens, for use in treating a UTI. (*Id.* ¶ 37). Plaintiff alleges that she, as "a reasonable consumer [who] understands that there is some sort of approval process that drugs must be subjected to before they can be legally sold to consumers . . . . also understands that if Walgreens—a trusted local pharmacy—is selling a drug, marketed as a finished product, that such drug is approved for lawful sale." (*Id.* ¶¶ 39-40). Plaintiff believed that Defendant could lawfully sell the Products at issue. (*Id.* ¶ 40).

Plaintiff asserts claims on behalf of herself and a putative class and seeks certification of the following class: "All persons in the United States who purchased the Products from Walgreens within the four years prior to the filing of this Complaint" ("putative class"). (*Id.* ¶ 41). In the alternative, Plaintiff seeks certification of a putative California class. (*Id.* ¶ 42).

In claim I, Plaintiff alleges that Defendant's "very sale of the Products is an express warranty that the Products are lawful to sell." (*Id.* ¶ 54). Such "affirmations of fact and promises" by selling the Products "became part of the basis of the bargain between Defendant and [the] Plaintiff[/]Class, thereby creating an express warranty that the Product[s] . . .were legal to sell." (*Id.* ¶ 55). Plaintiff alleges the Products, however, are in fact not legal to sell as they are not FDA approved and are not "marketed under an established OTC drug monograph." (*Id.* ¶ 56). Plaintiff alleges that she and members of the putative class suffered economic injury as a direct and proximate result of Defendant's breach of warranty as "they would not have purchased the Product on the same terms if they had known that the Product was illegal to sell." (*Id.* ¶ 57).

pagination.

Thus, Plaintiff alleges that she and the putative class suffer damages "either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as sold." (*Id.* ¶ 58).

In claim II, Plaintiff alleges Defendant is a "merchant" within the meaning of the Uniform Commercial Code ("UCC") and that the Products it sold and marketed are also "goods" under the UCC. (*Id.* ¶ 60). Thus, Defendant impliedly warranted that the Products are merchantable, including that the Products are finished drug products that are legal to sell. (*Id.*). Plaintiff alleges that "this implied warranty was false with respect to the [Products] sold to Plaintiff and [the putative class]" as the Products did not conform to the representations on the Products' containers or labels that the drugs are capable of being lawfully sold. (*Id.* ¶¶ 61-62). Plaintiff alleges that "Defendant knew the Products would be purchased and used by Plaintiff and [the putative class] and that the Products are not FDA[-]approved" and are they not "marketed under an established OTC drug monograph." (*Id.* ¶ 65). Thus, Plaintiff alleges Defendant breached its implied warranty of merchantability, resulting in injury to Plaintiff and the putative class. (*Id.* ¶¶ 66-68).

In claim III, Plaintiff alleges violation of the California Unfair Competition Law ("UCL"), California Business Professions Code §§ 17200 *et seq.*, which prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising." (*Id.* ¶ 70); *see* Cal. Bus. & Prof. Code § 17200. Plaintiff alleges that members of the public, *i.e.,* reasonable consumers, are likely to be deceived by Defendant's conduct in selling the Products as lawful, finished-drug products when the Products are not lawful to sell such that the conduct is "fraudulent" within the meaning of the UCL. (*Id.* ¶ 73). Plaintiff alleges that such conduct is also "unfair" under the UCL for Defendant having realized profits from the sale. (*Id.* ¶ 74). Plaintiff alleges that Defendant's unlawful sale in violation of, generally, "the laws and regulations surrounding the drug approval process[,]" can serve as a predicate for a Section 17200 "unlawful" violation, and Defendant has done so here. (*Id.* ¶¶ 75-77).

Plaintiff seeks on behalf of herself, and the putative class, restitution and disgorgement of all moneys received by Defendant through the alleged unlawful sale of the Products as well as

injunctive relief including, but not limited to, putting a stop to the unlawful sale of the Products. (*Id.* ¶¶ 79-80).  Plaintiff prays for an order certifying the class action and the award of damages as appropriate.  (*Id.* at 19-20).

## II.  APPLICABLE LAW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief).  A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010).  The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citations omitted).  The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'"  *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*,

733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

"For a [Rule] 12(b)(6) motion, a court generally cannot consider material outside the complaint." *Hamilton v. Bank of Blue Valley*, 746 F. Supp.2d 1160, 1167 (E.D. Cal. 2010) (citing *Van Winkle v. Allstate Ins. Co.*, 290 F. Supp.2d 1158, 1162, n.2 (C.D. Cal. 2003)). "Nonetheless, a court may consider exhibits submitted with the complaint." *Id*. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id*. at 1168 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). Accord, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F. 3d 1119 (9th Cir. 2002) "A court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Hamilton*, 746 F. Supp.2d at 1168 (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

In addition, a Court also may in connection with a Rule 12(b)(6) motion matters of public record suitable for judicial notice and "unattached evidence on which the complaint necessarily relies if: [a] the complaint refers to the document; [b] the document is central to the plaintiff's claim; and [c] no party questions the authenticity of the document.'" *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020) (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011)). The Court may review such material without converting a motion to dismiss into a motion for summary judgment. *Harris v. Cnty. of Orange*, 17 F.4th 849, 865 (9th Cir. 2021) (Forrest, J., concurring); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

///

///

## III. DISCUSSION

### A. Request for Judicial Notice

Federal Rule of Evidence 201 permits a court to take judicial notice of any facts "generally known within the trial court's territorial jurisdiction "or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). "Facts subject to judicial notice may be considered by a court on a motion to dismiss." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that courts ruling on 12(b)(6) motions to dismiss may take into consideration "matters of which a court may take judicial notice"); *Pruitt v. United States Bank, N.A.*, No. 1:13-cv-01198-AWI-SKO, 2013 WL 6798999, at *1 (E.D. Cal. Dec. 20, 2013) (*citing In re Russell*, 76 F.3d 242, 244 (9th Cir. 1996)); *see Indemnity Corp v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (a court may take judicial notice of matters of public record outside the pleadings).

Defendant argues that "[a]s Plaintiff acknowledges in the Complaint, the marketing and use of [PhenAzo] pre-dates the FDCA." (Doc. 16 at 8); (*see* Doc. 1 ¶¶ 14-15) ("PhenAzo's analgesic properties were discovered in 1932 . . . [and] is a urinary analgesic used for the relief of urinary pain, burning, and discomfort associated with [UTIs] and other urinary conditions."). Defendant argues that PhenAzo is a grandfathered drug under 21 U.S.C. § 321(p)(1) that has not had its legality challenged by the FDA nor need it undergo either of the two approval mechanisms Plaintiff alleges is required before they can lawfully be sold. (Doc. 16 at 8). Thus, Defendant requests that the Court take judicial notice of the following facts and government website in support of its motion to dismiss:

> Phenazopyridine Hydrochloride was synthesized in 1914. It was adopted by the US Pharmacopoeia in 1928 and began being marketed at that time. *See* U.S. Dep't Health & Human Servs., National Center for Advancing Translational Sciences (NCATS) https://drugs.ncats.io/drug/0EWG668W17 (last visited Apr. 15, 2024).

6

(*Id.* at 2). The website is a comprehensive portal for drug development information maintained by the National Center for Advancing Translational Sciences ("NCATS"), which is a part of the National Institutes of Health ("NIH").

The Court has examined Defendant's proffered government website and finds it is suitable for judicial notice as a matter of public record that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) ("a court may take judicial notice of matters of public record."); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities. . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [] therein."); *see also In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023-24 (C.D. Cal. 2008) (taking judicial notice of drug labels taken from FDA's website); *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (taking judicial notice of information posted on a Department of Health and Human Services web site); *Rice v. Kimberly-Clark Corp.*, No. 2:21-cv-01519-DAD-KJN, 2022 WL 16804522, at *3 (E.D. Cal. Nov. 8, 2022) (taking judicial notice of documents on the FDA website). Therefore, the Court grants Defendant's request for judicial notice. The Court identifies below facts within the proffered government website it concludes may be "accurately and readily determinable" and subject to judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

B. Implied Preemption and the FDCA's Bar on Private Enforcement

1. Governing Law

"[T]he FDCA subjects the drug industry to a comprehensive regulatory authority." *Franz v. Beiersdorf, Inc.*, No. 14CV2241-LAB-RBB, 2015 WL 4659104, at *4 (S.D. Cal. Aug. 5, 2015). "Congress made the FDA responsible for investigating potential violations of the FDCA, and gave it a number of enforcement mechanisms, including injunction proceedings, civil and criminal penalties, and seizure." *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Servs., Inc.*, No. SACV20011506CJCJDEX, 2020 WL 6867069, at *2 (C.D. Cal. Nov. 18, 2020),

7

*aff'd* 48 F.4th 1040 (9th Cir. 2022) (citing 21 U.S.C. §§ 332–34, 372). Given this scheme, the FDCA does not provide a private right of action. *Telebrands Corp. v. Luminas Int'l LLC*, No. 322CV00891RSHWVG, 2023 WL 6370902, at *3 (S.D. Cal. July 12, 2023). While "citizens may petition the FDA to take administrative action, 21 C.F.R. §§ 10.25(a), 10.30, private enforcement of the statute is barred: 'all such proceedings for the enforcement, or to restrain violations of [the FDCA] shall be by and in the name of the United States.' 21 U.S.C. § 337(a)." *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1119 (9th Cir. 2013). "The Supreme Court made clear … that [] Section [337] also limits the ability of a private plaintiff to pursue claims under state law theories where such claims collide with the exclusive enforcement power of the federal government." *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) (citation omitted). A private action is barred where "the claim would require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was such a violation." (*Id.*).

Section 337 implicates the bar of implied preemption where the claim at issue is brought under state law. *Telebrands Corp.*, 2023 WL 6370902 at *3. In *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341 (2001), the Supreme Court held that a state law tort claim based on alleged fraudulent representations made by a medical device manufacturer that resulted in approval of a medical device was preempted by Section 337 where the state law fraud claims "exist[ed] solely by virtue of the FDCA . . . requirements." *Buckman Co.*, 531 U.S. at 353. The *Buckman* plaintiffs were not "relying on traditional state tort law which had predated the federal enactments in question," but "the existence of these federal enactments [were] a critical element in their case." (*Id.*). The Court observed that allowing plaintiffs' state law claims to proceed "would exert an extraneous pull on the scheme established by Congress," and was therefore preempted by that scheme. (*Id.*).

In *Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013), a medical device case alleging state law claims of fraud by omission against a laser manufacturer based on a failure to disclose, the Ninth Circuit held the claims were expressly preempted by a separate provision of the FDCA applicable to medical devices. *Perez*, 711 F.3d at 1119-20 (citing 21 U.S.C. § 360k(a)). Notably,

8

the Ninth Circuit also ruled that the state law claims were independently barred by Section 337, and impliedly preempted because it conflicts with the FDCA's enforcement scheme, and provided further clarity:

> In *Buckman*, the Court held that the plaintiffs' "fraud-on-the-FDA" claims were impliedly preempted by the FDCA because they conflicted with the federal statutory scheme, which "amply empowers the FDA to punish and deter fraud against the [FDA]." . . . Perez's fraud by omission claim "exist[s] solely by virtue of the FDCA . . . requirements," with respect to the approved use of the Laser. As in *Buckman*, "the existence of these federal enactments is a critical element of their case." Although Perez is not barred from bringing *any* fraud claim related to the surgeries, he cannot bring a claim that rests solely on the non-disclosure to patients of facts tied to the scope of PMA approval."

*Perez*, 711 F.3d at 1119 (internal citations omitted). In short, the implied preemption holding rested on two propositions—first, that private enforcement of the FDCA is barred and second, the claim for fraud by omission exists solely by virtue of the FDCA. *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F.4th 1040, 1049 (9th Cir. 2022) (internal quotations omitted). The Ninth Circuit distinguished the *Perez* plaintiffs' fraud-by-omission claims from cases involving claims alleging affirmative false assertions of FDA approval. (*Id.* at n.5); (s*ee, e.g., PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924–25 (9th Cir. 2010) (affirming summary judgment on a claim based on alleged misrepresentations regarding FDA clearance but vacating summary judgment on a claim alleging a false projection of when a laser device would be available on the market and a claim alleging misrepresentation of a defendant's contribution to the invention of the laser); *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 940 (8th Cir. 2005) (allowing a competitor-plaintiff's claims under the Lanham Act and state law to proceed where the plaintiff "alleged reasonably clear claims of FDA approval" by the defendant)).

In *Nexus Pharmaceuticals*, a pharmaceutical manufacturer brought claims under the UCL and other similar state laws against a competitor compounding pharmacy for the alleged sale of non-FDA-approved drugs. *Nexus Pharmaceuticals, Inc.*, 48 F.4th at 1041. The Ninth Circuit affirmed the district court's dismissal of the case on the grounds of Section 337's bar on private enforcement and implied preemption. (*Id.* at 1050-51). The Ninth Circuit applied the standard

articulated in *PhotoMedex*, a Lanham Act case, which held:

> Because the FDCA forbids private rights of action under that statute, a private action brought under [other laws] may not be pursued when, as here, the claim would require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was such a violation.

(*Id.* at 1049) (quoting *PhotoMedex*, 601 F.3d at 924)). Under this standard, the Ninth Circuit held that the plaintiff's claims for unfair trade practices were barred as they would require litigation of the alleged underlying FDCA violation even though the FDA has not itself determined that there was a violation. (*Id.*). The Ninth Circuit concluded that, with respect to whether the FDCA was violated, "[t]he plain text of the FDCA leaves that determination in the first instance to the FDA's balancing of risks and concerns in its enforcement process." (*Id.* at 1050).

### 2.  Analysis

Plaintiff's state law claims allege that she and members of the putative class have suffered economic injury from Defendant's sale of the Products when they are not legal to sell as the Products are not FDA approved and not marketed under an established OTC drug monograph. (Doc. 1 ¶¶ 56-57, 62-67, 77-78). Plaintiff alleges her California UCL claim is predicated upon a general violation of "the laws and regulations surrounding the drug approval process." (*Id.* ¶ 76, 77). In short, Plaintiff's entire complaint is premised upon the lawfulness of Defendant's sale of the Products under the FDCA, whether they are FDA-approved or are marketed under an established OTC drug monograph. This squarely triggers implied preemption under the FDCA as articulated in *Perez* and *Nexus Pharmaceuticals*.

Generally, the FDCA requires approval by the FDA before drugs can be sold. *Nexus Pharmaceuticals*, 2020 WL 6867069, at *1; *see* 21 U.S.C. § 355(a) ("No person shall introduce or deliver for introduction into interstate commerce any new drug[ without FDA approval.]"); *see also* 21 U.S.C. § 331 (FDCA's prohibition on the adulteration or misbranding of any drug, and introduction thereof, into interstate commerce).

Although Plaintiff's claims "are not premised [explicitly] upon a violation of the FDCA," (Doc. 18 at 3), litigation of the claims would require litigation of whether Defendant violated the

1  FDCA for introduction of PhenAzo for sale without proper FDA approval.  If Defendant did not
2  violate the FDCA or its regulations, then each of Plaintiff's claims would fail.  *Telebrands Corp.*,
3  2023 WL 6370902, at *4.  The allegation that the Products are illegal to sell as they are not FDA
4  approved and they are not marketed under an established OTC monograph are veiled allegations
5  of an FDCA violation, which are a critical element of each claim.  *Perez*, 711 F.3d at 1119
6  ("[T]he existence of these federal enactments is a critical element in their case.").

7  The Ninth Circuit determined Section 337 barred the customer-patient plaintiffs' state law
8  fraud by omission claims in *Perez*, and similarly barred the California UCL claims raised in
9  *Nexus Pharmaceuticals*.  *Perez*, 711 F.3d at 1119-20; *Nexus Pharmaceuticals, Inc.*, 48 F.4th at
10 1050-51.  Several district court opinions within the Ninth Circuit have followed suit.  *See*
11 *Telebrands Corp.*, 2023 WL 6370902, at *4-5 (following *Nexus Pharmaceuticals* and *Perez* in
12 finding state law claims barred by Section 337 and implied preemption); *ImprimisRx, LLC v.*
13 *OSRX, Inc.*, No. 21-CV-01305-BAS-DDL, 2023 WL 2919318, at *4 (S.D. Cal. Apr. 12, 2023)
14 (dismissing plaintiff's UCL claim because it relies on violations of the FDCA and was therefore
15 preempted); *Wilson v. ColourPop Cosms., LLC*, No. 22-CV-05198-TLT, 2023 WL 6787986, at
16 *8 (N.D. Cal. Sept. 7, 2023), *appeal dismissed*, No. 23-2627, 2023 WL 9112928 (9th Cir. Dec.
17 20, 2023) (dismissing plaintiff's claims on implied preemption grounds despite fact that the
18 FDCA was not referred to in operative complaint); accord *Collyer v. Catalina Snacks Inc.*, 712 F.
19 Supp. 3d 1276, 1288 (N.D. Cal. 2024) (dismissing the unlawful prong of UCL claim on implied
20 preemption grounds).

21 In the motion to dismiss, Defendant argues that Plaintiff's action "must be dismissed
22 because it runs afoul of the FDCA's prohibition on private enforcement of the statute and is
23 therefore impliedly preempted." (Doc. 16 at 4).  Defendant argues that "each of the individual
24 [claims] are premised upon Plaintiff's allegation of illegality." (*Id.* at 6).

25 Plaintiff argues in her opposition that her claims are not preempted by the FDCA and
26 seeks to distinguish *ImprimisRx* and *Telebrands* as those cases "necessarily involved a
27 determination that a specific FDCA provision had been violated." (Doc. 18 at 4).  However, the
28 holding in *Telebrands* barring the state law claims was premised upon Section 337 and Ninth

1    Circuit authority and did not involve a determination that any specific FDCA provision had been
2    violated. *Telebrands Corp.*, 2023 WL 6370902, at *5 ("[*Nexus*] cited and relied on *Perez*, which
3    barred state-law claims for fraud by omission, similar to Telebrands' claims here. … [T]hose
4    cases bar Telebrands' claims as well."). Nor did the holding in *ImprimisRx* dismissing the UCL
5    claim as impliedly preempted involve any determination of a specific FDCA violation as the basis
6    for dismissal. *ImprimisRx*, 2023 WL 2919318, at *4 ("[I]f *an* FDCA violation is integral to
7    Plaintiff's UCL claim, then the FDCA's prohibition on private enforcement preempts the claim.")
8    (emphasis added). Indeed, a finding of implied preemption need not be based on a particular
9    violation of the FDCA. *See* 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or
10   to restrain violations, of [the FDCA] shall be by and in the name of the United States.").

11           Separately, Plaintiff's attempt to distinguish *Nexus* because the harm alleged there was to
12   a manufacturer, and not a consumer as is Plaintiff, fails. In *Nexus*, the Ninth Circuit recounted the
13   precedential support of the FDA's statutory monopoly on enforcement authority. *Nexus*
14   *Pharmaceuticals, Inc.*, 48 F.4th at 1048 ("We have been protective of the FDA's statutory
15   monopoly on enforcement authority."). *Nexus* reaffirmed the holding in *Perez*, a putative class
16   action of individuals advancing fraud claims under the California Consumer Legal Remedies Act
17   and other state laws, in finding the claims impliedly preempted. *Nexus Pharmaceuticals, Inc.*, 48
18   F.4th at 1048-49 ("This implied preemption holding rested on two propositions. First, we noted
19   that 'private enforcement of the [FDCA] statute is barred.' And second, the claim for fraud by
20   omission 'exist[s] solely by virtue of the FDCA.' . . . *Perez* . . . correctly applied that decision.").

21           Here, Plaintiff's claims likewise rely upon a violation of the FDCA. Plaintiff is bringing
22   claims because the sale of the Products allegedly is unlawful under the FDCA for lack of FDA
23   approval. Under the controlling authorities and persuasive unpublished district court cases noted
24   above, the Court concludes that Plaintiff's state law claims, all of which are premised upon the
25   lawfulness of the sale of the Products under the FDCA and thereby rely upon a violation of the
26   FDCA, are barred under Section 337 and the doctrine of implied preemption. *Nexus*
27   *Pharmaceuticals, Inc.*, 48 F.4th at 1050 ("Because the FDCA forbids private rights of action
28   under that statute, a private action brought under [other laws] may not be pursued when, as here,

1  the claim would require litigation of the alleged underlying FDCA violation in a circumstance
2  where the FDA has not itself concluded that there was such a violation.").

3  Separately, it is clear from the NCATS website, and the information offered by
4  Defendant, that Phenazopyridine Hydrochloride was approved in 1928.  The NCATS website
5  describes Phenazopyridine Hydrochloride as "an azo dye marketed in the US [that] became
6  widely prescribed for the treatment of urinary tract infections (UTIs). . .. Currently,
7  phenazopyridine is classified as a urinary analgesic that relieves [symptoms] associated with UTI,
8  trauma, and surgery."  The Court takes judicial notice that PhenAzo is indeed a drug approved for
9  the treatment of UTIs.  Despite Plaintiff's argument otherwise, the issue of whether "PhenAzo is
10 FDA approved" is not a question of fact.  (Doc. 18 at 5).  Further, whether PhenAzo may be
11 lawfully sold as a "grandfathered" drug or by the specific avenues described in the complaint is
12 immaterial to the finding that Plaintiff's claims rely upon a violation of the FDCA.

13         C.      Leave to Amend

14 A court considers five factors in deciding whether leave to amend is appropriate: bad
15 faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the
16 plaintiff has previously amended the complaint.  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th
17 Cir. 2004).  Federal Rule of Civil Procedure 15(a) provides that "leave to amend should be freely
18 granted 'when justice so requires.'"  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *see*
19 Fed. R. Civ. P. 15(a)(2).  However, a court may deny leave to amend if it "determines that the
20 allegation of other facts consistent with the challenged pleading could not possibly cure the
21 deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.
22 1986); *Lopez*, 203 F.3d at 1129 ("Under Ninth Circuit case law, district courts are only required
23 to grant leave to amend if a complaint can possibly be saved.").  When a complaint cannot be
24 cured by additional facts, leave to amend need not be provided.  *Doe v. United States*, 58 F.3d
25 494, 497 (9th Cir. 1995).

26 In a single sentence in her opposition, Plaintiff contends that "she could cure any pleading
27 defect through [the grant of] leave to amend [] her Complaint."  (Doc. 18).  However, Plaintiff
28 offers no argument as to how her complaint may possibly be cured by the allegation of other

facts. *Doe*, 58 F.3d at 497. Defendant's motion argues that the complaint should be dismissed without leave to amend, because amendment would be futile in light of the bar of implied preemption. (Doc. 16 at 10).

"Courts have dismissed without leave to amend where the dismissal was based on preemption." *Telebrands Corp.*, 2023 WL 6370902, at *5 (citing *Brown v. Van's Int'l Foods, Inc.*, No. 22-cv-1, 2022 WL 1471454, at *6 (N.D. Cal. May 10, 2022)) (dismissing claim with prejudice based on FDCA preemption under 21 U.S.C. § §343-1(a)(5); where a claim is preempted by the FDCA, the claim's defect "lies in the legal theory, not the factual allegations …."); *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1243 (E.D. Cal. 2018) (finding, because the claims were preempted under state law, "amendment is futile"); *Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1188-89 (N.D. Cal. 2018) (holding claims dismissed as preempted by the Tobacco Control Act "are necessarily dismissed with prejudice"). "As other courts have recognized, the [FDCA's] public enforcement mechanism is thwarted if savvy plaintiffs can label as arising under a state law for which there exists a private enforcement mechanism a claim that in substance seeks to enforce the FDCA." *Somers v. Beiersdorf, Inc.*, 467 F. Supp. 3d 939, 939-40 (S.D. Cal. 2020) (internal citations and quotations omitted). Additional factual allegations cannot cure the deficiency identified here. *Telebrands Corp.*, 2023 WL 6370902 at *5. The Court therefore declines to grant Plaintiff leave to amend.

*Remainder of This Page Intentionally Left Blank*

**IV.    CONCLUSION AND ORDER**

Based on the foregoing, it is HEREBY ORDERED:

1. Defendant's motion to dismiss (Doc. 16) is GRANTED;

2. Plaintiff's complaint (Doc. 1) is DISMISSED without leave to amend; and

3. The Clerk of the Court is DIRECTED to close this case.

IT IS SO ORDERED.

Dated:    **December 20, 2024**                    _____
                                                                              UNITED STATES MAGISTRATE JUDGE